**UNITED STATES DISTRICT COURT
DISTRICT OF NEVADA**

| | | |
|---|---|---|
| CHARLES J. BISHOP, | ) | 3:12-cv-00224-MMD-WGC |
| Plaintiff, | ) | |
| vs. | ) | **REPORT AND RECOMMENDATION OF U.S. MAGISTRATE JUDGE** |
| MICHAEL J. ASTRUE, Commissioner of Social Security, | ) | |
| Defendant. | ) | |

This Report and Recommendation is made to the Honorable Miranda M. Du, United States District Judge. The action was referred to the undersigned Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1)(B) and the Local Rules of Practice, LR IB 1-4. Before the court is Plaintiff Charles J. Bishop's (Plaintiff) Motion for Reversal of the Commissioner's Decision. (Doc. # 14.)[1] Defendant Commissioner filed an opposition to Plaintiff's motion for reversal (Doc. # 15.), and a cross-motion for summary judgment (Doc. # 16).[2] After a thorough review, the court recommends that Plaintiff's motion be denied and Defendant Commissioner's motion be granted.

**I. FACTUAL AND PROCEDURAL BACKGROUND**

At the time of the Commissioner's final decision, Plaintiff was a forty-four-year-old man who had a high school education and received specific vocational training as a firefighter, emergency medical technician, and truck driver. (Administrative Record (AR) 39.)

---

[1] Refers to court's docket number.

[2] These documents are identical but were separately docketed by the Clerk.

1    Plaintiff previously worked as a fireman for nineteen (19) years, as a truck driver for fifteen
2    (15) years, and as a runner at a casino for approximately one (1) month. (AR 131.)

3    On June 23, 2008, Plaintiff filed an application for Disability Insurance Benefits (DIB)
4    and Supplemental Security Income (SSI), alleging that he became disabled on January 30,
5    2006. (AR 109-12, 113-14.) Plaintiff alleged disability due to post-traumatic stress disorder
6    (PTSD), depression, and heart disease. (AR 123, 129.)[3] The Commissioner denied Plaintiff's
7    application initially on September 26, 2008 and upon reconsideration on January 13, 2009.
8    (AR 69, 76.) Plaintiff made a timely request for a hearing before an Administrative Law Judge
9    (ALJ) to challenge the Commissioner's determination. (AR 82-83.)

10    On October 28, 2010, Plaintiff, represented by counsel, appeared and testified at the
11    hearing before the ALJ. (AR 11-30.) The ALJ followed the five-step sequential process for
12    evaluating disability claims, set forth in 20 C.F.R. § 404.1520,[4] and issued a written decision
13    on October 28, 2010, finding Plaintiff had "not been disabled" pursuant to the Social Security
14    Act at any time from the alleged onset date through the date of the ALJ's decision. (AR. 11-
15    12.) Plaintiff appealed the decision, and the Appeals Council denied review. (AR 1-4.) Thus,
16    the ALJ's decision became the final decision of the Commissioner.

17    Plaintiff now appeals the ALJ's decision to the district court. (Doc. # 14.) Plaintiff
18    argues that the ALJ improperly disregarded Plaintiff's treating physician's assessment and
19    failed to consider various factors in determining how much weight to accord the evidence
20    pursuant to 20 C.F.R. § 404.1527(d).[5] Plaintiff further argues that the ALJ erred at step five
21    by using the Medical Vocational Guidelines (Grids) as a framework to determine that Plaintiff

---

[3] Plaintiff does not contest the ALJ's findings as to his heart disease. (AR 14.)

[4] The DIB and SSI regulations relevant in this case are virtually identical; as such, only the DIB regulations will be cited in this Report and Recommendation. Parallel SSI regulations are found in 20 C.F.R. §§ 416.900 - 416.999 and correspond with the last two digits of the DIB citation (*e.g.*, 20 C.F.R. § 404.1520 corresponds with 20 C.F.R. § 416.920).

[5] Plaintiff and the Commissioner refer to a previous version of 20 C.F.R. § 404.1527(d) effective prior to March 25, 2012, when referring to factors used to evaluate medical opinions. (*See* Docs. # 14, # 15, # 16.) The most current version of the C.F.R., effective August 24, 2012, lists these factors in 20 C.F.R. § 404.1527(c).

could perform work in the national economy rather than consulting a vocational expert (VE). (Doc. # 14 at 7-8.)

## II.  STANDARD OF REVIEW

The court must affirm the ALJ's determination if it is based on proper legal standards and the findings are supported by substantial evidence in the record. *Stout v. Comm'r Soc. Sec. Admin.*, 454 F.3d 1050, 1052 (9th Cir. 2006); *see also* 42 U.S.C. § 405(g) ("findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive"). "Substantial evidence is more than a mere scintilla but less than a preponderance." *Bayliss v. Barnhart*, 427 F.3d 1211, 1214 n.1 (9th Cir. 2005) (internal quotation marks and citation omitted). "It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)); *see also Webb v. Barnhart*, 433 F.3d 683, 686 (9th Cir. 2005).

To determine whether substantial evidence exists, the court must look at the record as a whole, considering both evidence that supports and undermines the ALJ's decision. *Orteza v. Shalala*, 50 F. 3d 748, 749 (9th Cir. 1995) (citation omitted). "However, if evidence is susceptible of more than one rational interpretation, the decision of the ALJ must be upheld." *Id.* at 749 (citation omitted). The ALJ alone is responsible for determining credibility and for resolving ambiguities. *Meanel v. Apfel*, 172 F.3d 1111, 1113 (9th Cir. 1999).

The initial burden of proof rests upon the claimant to establish disability. 20 C.F.R. § 404.1512(a)*; Howard v. Heckler*, 782 F.2d 1484, 1486 (9th Cir. 1986) (citations omitted). To meet this burden, a plaintiff must demonstrate an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected … to last for a continuous period of not less than 12 months …." 42 U.S.C. § 423 (d)(1)(A).

3

### III.  DISCUSSION

**A. Five-Step Sequential Process**

The Commissioner has established a five-step sequential process for determining whether a person is disabled. 20 C.F.R. § 404.1520*; see also Bowen v. Yuckert*, 482 U.S. 137, 140-41 (1987). If at any step the Social Security Administration (SSA) can make a finding of disability or nondisability, a determination will be made and the SSA will not further review the claim. 20 C.F.R. § 404.1520(a)(4)*; see also Barnhart v. Thomas*, 540 U.S. 20, 24 (2003).[6]

In the first step, the Commissioner determines whether the claimant is engaged in "substantial gainful activity"; if so, a finding of nondisability is made and the claim is denied. 20 C.F.R. § 404.1520(a)(4)(i), (b); *Yuckert*, 482 U.S. at 140. If the claimant is not engaged in substantial gainful activity, the Commissioner proceeds to step two.

The second step requires the Commissioner to determine whether the claimant's impairment or combinations of impairments are "severe." 20 C.F.R. § 404.1520(a)(4)(ii), (c); *Yuckert*, 482 U.S. at 140-41. An impairment is severe if it significantly limits the claimant's physical or mental ability to do basic work activities. *Id*. Basic work activities are "the abilities and aptitudes necessary to do most jobs[,]" which include: "(1) [p]hysical functions such as walking, standing, sitting, lifting, pushing, pulling reaching, carrying, or handling; (2) [c]apacities for seeing, hearing, and speaking; (3) [u]nderstanding, carrying out, and remembering simple instructions; (4) [u]se of judgment; (5) [r]esponding appropriately to supervision, co-workers and usual work situations; and (6) [d]ealing with changes in a routine work setting." 20 C.F.R. § 404.1521. If a claimant's impairment is so slight that it causes no more than minimal functional limitations, the Commissioner will find that the claimant is not disabled. 20 C.F.R. § 404.1520(a)(4)(ii), (c). If, however, the Commissioner finds that the claimant's impairment is severe, the Commissioner proceeds to step three. *Id*.

---

[6] The ALJ should take into account the affects of alcoholism and drug addiction on the claimant to make a disability determination in steps one through five *without* separating out the impact of alcoholism or drug addiction on the claimant. *See Bustamante v. Massanari*, 262 F.3d at 955 (9th Cir. 2001) (emphasis added).

In the third step, the Commissioner determines whether the impairment is equivalent to one of a number of specific impairments listed in 20 C.F.R. pt. 404, subpt. P, app.1 (Listed Impairments). 20 C.F.R. § 404.1520(a)(4)(iii), (d). The Commissioner presumes the Listed Impairments are severe enough to preclude any gainful activity, regardless of age, education, or work experience. 20 C.F.R. § 404.1525(a). If the claimant's impairment meets or equals one of the Listed Impairments, and is of sufficient duration, the claimant is conclusively presumed disabled. 20 C.F.R. § 404.1520(a)(4)(iii), (d). If the claimant's impairment is severe, but does not meet or equal one of the Listed Impairments, the Commissioner proceeds to step four. *Yuckert*, 482 U.S. at 141.

In step four, the Commissioner determines whether the claimant can still perform "past relevant work." 20 C.F.R. § 404.1520(a)(4)(iv), (e), (f). Past relevant work is that which a claimant performed in the last fifteen (15) years, which lasted long enough for him or her to learn to do it, and was substantial gainful activity. 20 C.F.R. § 404.1565(a). The ALJ reviews the claimant's "residual functional capacity" (RFC) and the physical and mental demands of the work previously performed. *See id.*; *see also Berry v. Astrue*, 622 F.3d 1228, 1231 (9th Cir. 2010). RFC is what the claimant can still do despite his or her limitations. 20 C.F.R. § 404.1545. In determining RFC, an ALJ must assess all evidence, including the claimant's and others' descriptions of limitation, and medical reports, to determine what capacity the claimant has for work despite the impairments. *See* 20 C.F.R. § 404.1545(a).

At step four, the ALJ may consider any of the claimant's daily activities that "may be seen as inconsistent with the presence of a condition which would preclude all work activity." *Curry v. Sullivan*, 925 F.2d 1127, 1130 (9th Cir. 1990) (upholding denial of disability benefits where claimant could "take care of her personal needs, prepare easy meals, do light housework, and shop for some groceries"); *see also Burch v. Barnhart*, 400 F.3d 676, 681 (9th Cir. 2005) (upholding denial of benefits based in part on determination that claimant performed daily activities that were transferrable to a work setting); *compare Orn v. Astrue*, 495 F.3d 625, 639 (9th Cir. 2007) (concluding activities not transferrable to work setting);

5

*Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1998) (claimant should not be "penalized for attempting to lead [a] normal [life] in the face of [her] limitations"); *Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 2007) (noting that "many home activities are not easily transferable to what may be the more grueling environment of the workplace, where it might be impossible to periodically rest or take medication").

A claimant can return to previous work if he or she can perform the "actual functional demands and job duties of a particular past relevant job" or "[t]he functional demands and job duties of the [past] occupation as generally required by employers throughout the national economy." *Pinto v. Massanari*, 249 F.3d 840, 845 (9th Cir. 2001) (internal quotation and citation omitted).

If the claimant can still do past relevant work, then he or she is not disabled for purposes of the Act. 20 C.F.R. § 404.1520(f); *see also Berry*, 662 F.3d at 131 ("Generally, a claimant who is physically and mentally capable of performing past relevant work is not disabled, whether or not he could actually obtain employment.").

If, however, the claimant cannot perform past relevant work, the burden shifts to the Commissioner to establish, in step five, that the claimant can perform work available in the national economy. 20 C.F.R. § 404.1520(e), (f); *see also Yuckert*, 482 U.S. at 141-142, 144. If the claimant cannot do the work he or she did in the past, the Commissioner must consider the claimant's RFC, age, education, and past work experience to determine whether the claimant can do other work. *Yuckert*, 482 U.S. at 141-42. The ALJ may meet this burden either through the testimony of a vocational expert or by reference to the Grids. *Tackett v. Apfel*, 180 F.3d 1094, 1100 (9th Cir. 1999).

"The [G]rids are matrices of the four factors identified by Congress-physical ability, age, education, and work experience-and set forth rules that identify whether jobs requiring specific combinations of these factors exist in significant numbers in the national economy." *Lockwood v. Comm'r of Soc. Sec. Admin.*, 616 F.3d 1068, 1071 (9th Cir. 2010) (internal quotation and citation omitted). The Grids place jobs into categories by their physical-

exertional requirements, and there are three separate tables, one for each category: sedentary work, light work, and medium work. 20 C.F.R. Part 404, Subpart P, Appx. 2, § 200.00. The Grids take administrative notice of the numbers of unskilled jobs that exist throughout the national economy at the various functional levels. *Id.* Each grid has various combinations of factors relevant to a claimant's ability to find work, including the claimant's age, education and work experience. *Id.* For each combination of factors, the Grids direct a finding of disabled or not disabled based on the number of jobs in the national economy in that category. *Id.*

The ALJ may not rely solely on the Grids unless they accurately and completely describe the claimant's abilities and limitations. *Jones v. Heckler*, 760 F.2d 993, 998 (9th Cir. 1985) (citation omitted). The ALJ must take the testimony of a vocational expert where the claimant suffers from non-exertional limitations that are "sufficiently severe so as to significantly limit the range of work permitted by his exertional limitation."[7] *Hoopai,* 499 F.3d at 1076 (internal quotation and citation omitted). Further, where the ALJ finds that a nonexertional limitation alone is severe [at step two of the sequential process] (absent any exertional limitation), the ALJ is not required to seek the assistance of a vocational expert at step five unless the nonexertional limitation(s) are "significant, sufficiently severe, and not accounted for in the grid[s]." *See id.* at 1076.

If, at step five, the ALJ establishes that the claimant can do other work which exists in the national economy, then he or she is not disabled. 20 C.F.R. § 404.1566. Conversely, if the ALJ determines the claimant unable to adjust to any other work, the claimant will be found disabled. 20 C.F.R. § 404.1520(g); *see also Lockwood*, 616 F.3d at 1071; *Valentine v. Comm'r of Soc. Sec. Admin.*, 574 F.3d 685, 689 (9th Cir. 2009). However, "[a] finding of

---

[7] It is important to note that "satisfaction of the step two threshold requirement that a claimant prove her limitations are severe is not dispositive of the step-five determination of whether the non-exertional limitations are sufficiently severe such as to invalidate the ALJ's exclusive use of the grids without the assistance of a vocational expert." *Hoopai v. Astrue*, 499 F.3d 1071, 1076 (9th Cir. 2007).

1  'disabled' under the five-step inquiry does not automatically qualify a claimant for disability
2  benefits." *Bustamante,* 262 F.3d at 954.

### B. Drug Addiction and Alcoholism Analysis

If, in the five-step sequential process, the ALJ finds the claimant is disabled and there is medical evidence of the claimant's drug addiction or alcoholism, the ALJ must determine whether the claimant's drug addiction or alcoholism is a contributing factor material to the determination of disability. *See* 20 C.F.R. § 404.1535(a).

In this analysis, the claimant bears the burden of proving that his or her drug addiction or alcoholism is not a contributing factor material to the ALJ's disability determination. Social Security Act, 42 U.S.C. § 423(d)(2)(C); 20 C.F.R. § 404.1535(b); *see also Parra v. Astrue*, 481 F.3d 742, 748 (9th Cir. 2007). To determine whether or not the claimant's drug addiction or alcoholism is a contributing factor material to the determination of disability, the ALJ "must first conduct the five-step sequential process including the affects of alcoholism or drug addiction without separating out the impact of alcoholism or drug addiction" on the claimant and make a disability determination. *See Bustamante*, 262 F.3d at 955 (citations omitted). If the ALJ finds that the claimant is disabled and there is "medical evidence of [his or her] drug addiction or alcoholism" in the record then the ALJ should proceed under 20 C.F.R. § 404.1535 to determine whether the claimant "would still [be found] disabled if [he or she] stopped using drugs or alcohol."20 C.F.R. § 404.1535(b)(1); *see also Bustamante,* 262 F.3d at 955 (citations omitted). "In making this determination [the ALJ] will evaluate which of [the claimant's] current physical and mental limitations, upon which [the ALJ] based [his or her] current disability determination, would remain if [the claimant] stopped using drugs and alcohol and then determine whether any of [the claimant's] remaining limitations would be disabling." 20 C.F.R. § 404.1535(b)(2).

If the ALJ finds that the claimant would not be disabled absent his or her drug addiction or alcoholism then the ALJ may deny benefits under 42 U.S.C. § 423(d)(2)(C).

8

*See , e.g., Parra*, 481 F.3d at 750. Conversely, if the ALJ finds the claimant would still be disabled absent his or her drug addiction or alcoholism, then the ALJ may grant benefits. *See id*. The ALJ's denial of benefits under 42 U.S.C. § 423(d)(2)(C) must be supported by substantial evidence and free from material error. *Id*.

**C. ALJ's Findings**

In the present case, the ALJ applied the five-step sequential process followed by the drug and alcohol addiction analysis. At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity from the alleged onset date of January 30, 2006. (AR 13.) At step two, the ALJ found it was established that Plaintiff suffered from the severe nonexertional impairments of PTSD, personality disorder, depression, and alcohol dependence. (AR 14.) At step three, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the Listed Impairments. (AR 14-15.) At step four, the ALJ included the affects of Plaintiff's alcohol abuse impairment in his RFC analysis, and found that the Plaintiff's "true impairment" was alcohol abuse. (AR 15.) The ALJ found that Plaintiff had the RFC to perform the full range of work at all exertional levels except that he must be limited to simple, repetitive tasks with no public contact and with only occasional contact with co-employees. (AR 15.) In addition, the ALJ concluded Plaintiff is currently unable to work for eight hours a day, five days a week. (AR 15-24.) As such, the ALJ determined that Plaintiff was unable to perform any past relevant work. (AR 24.)

At step five, the ALJ consulted the Grids, 20 C.F.R. Part 404, Subpart P, Appendix 2, as a framework for his disability determination because Plaintiff had only nonexertional limitations. (AR 25.) Using the Grids as a framework, the ALJ found that the Plaintiff's ability to perform work at all exertional levels had been compromised by nonexertional limitations from all of his impairments, including the substance abuse disorder. (AR 25.) Accordingly, the ALJ found that, considering the Plaintiff's age, education, work experience, RFC, and all impairments (including the affects of Plaintiff's alcoholism),

there were no jobs that existed in significant numbers in the national economy that Plaintiff could perform. (AR 25.) As the ALJ made a finding of disability, he then proceeded to the drug and alcohol addiction analysis. (AR 25-26.)

In the drug and alcohol addiction analysis the ALJ found that if the claimant stopped the substance use, the remaining limitations would cause more than a minimal impact on the Plaintiff's ability to perform basic work activities; therefore, Plaintiff would continue to have a severe impairment or combination of impairments. (AR 25-26.) The ALJ then found that, if the Plaintiff stopped his substance use, he would have the RFC to perform a full range of work at all exertional levels but he would be limited to unskilled work. (AR 26-27.) Further, the ALJ determined that if Plaintiff stopped the substance use, Plaintiff would continue to be unable to perform past relevant work. (AR 29.)

The ALJ then found, however, using the Grids as a framework, that the Plaintiff was not disabled whether or not the plaintiff had transferable job skills. (AR 30.) The ALJ determined that, if Plaintiff stopped the substance use, he would have the RFC to perform a full range of work at all exertional levels with the limitation that he must be limited to unskilled work; as such there would be a significant number of jobs in the national economy that the claimant could perform. (AR 26-29, 30.) Accordingly, the ALJ determined that Plaintiff's substance abuse disorder was a contributing factor material to the determination of disability pursuant to 20 § C.F.R. 404.1535. (AR 30.) Therefore, the ALJ found that the claimant was not disabled within the meaning of the Social Security Act at any time from his alleged onset date of January 30, 2006, through the date of the decision. (AR 30.)

**D. Step Five Determination**

Plaintiff asserts that the ALJ erred at step five of the sequential process. (Doc. # 14 at 7.) Plaintiff argues the ALJ improperly interpreted and discounted the treating physician's assessment that Plaintiff suffered from nonexertional impairments, *i.e.,* PTSD, personality disorder, and depression. As such, Plaintiff argues the ALJ incorrectly

10

attributed Plaintiff's inability to work to Plaintiff's alcoholism, and therefore, was required to consult a VE rather than rely on the Grids as a framework to determine whether Plaintiff could perform a job in the national economy. (Doc. # 14 at 8-9, 11.)

The Commissioner argues an ALJ is permitted to discount the treating physician's assessment when the physician's clinical notes and other recorded observations regarding the claimant's capabilities contradict the treating physician's assessment, and it is the ALJ's role to interpret the medical evidence and resolve conflicts and ambiguities. (Doc. # 15 at 6-7.) Additionally, the Commissioner argues an ALJ is permitted to rely on the Grids as a framework for his or her decision long as the nonexertional limitations do not significantly limit the range of work permitted by the exertional limitations. (Doc. # 15 at 8.) Here, the Commissioner asserts that the ALJ correctly interpreted and discounted the treating physician's assessment in finding that the nonexertional limitations on Plaintiff's ability to perform basic work activities were neither significant enough nor sufficiently severe to warrant the use of VE; therefore, the ALJ properly relied on the Grids as a framework in making his step five determination. (Doc. # 15 at 5.)

**1. Rejecting a Treating Physician's Assessment**

The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving ambiguities in the evidence. *Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989) (citations omitted). Various medical sources and opinions, including the treating physician's, are taken into account by the ALJ, and the final responsibility for deciding issues on the nature and severity of impairments is reserved to the ALJ. *See* 20 C.F.R. § 404.1527(d)(2).

A treating physician's assessment is granted substantial weight. *Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1228 (9th Cir. 2009) (internal quotation and citation omitted). However, the ALJ is not required to accept the opinion of a treating physician if that opinion is brief, conclusory, and inadequately supported by clinical findings. *Id.* (internal quotation and citation omitted). "When evidence in the record contradicts the

11

[assessment] of the treating physician, the ALJ must present specific and legitimate reasons for discounting [or rejecting] the treating physician's [assessment], supported by substantial evidence". *Id.* (internal quotation and citations omitted). The ALJ can meet this burden by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his or her interpretation thereof, and making findings. *Tommasetti v. Astrue,* 533 F.3d 1035, 1041 (9th Cir. 2008). The ALJ is not required to explicitly use any "magic words" (i.e. "I reject Dr. X's opinion …") to reject the opinion of a treating physician. *See Magallanes*, 881 F.2d at 755. The ALJ must set forth why his or her interpretations of the evidence are correct and the treating physician's are not. *See Embrey v. Bowen*, 849 F.2d 418, 421–422 (9th Cir. 1988). Furthermore, the reports of consultative physicians called in by the ALJ may serve as substantial evidence. *Magallanes*, 881 F.2d at 752.

    The Ninth Circuit has identified several reasons for discounting a treating physician's assessment which it finds legitimate. An ALJ may discount a treating physician's assessment if it is contradicted by the physician's own medical records. *Tommasetti*, 533 F.3d at 1041 (citation omitted). An ALJ may also discount a treating physician's opinion "if it is based to a large extent on a claimant's self-reports that have been properly discounted as incredible." *Id.* (internal quotations and citation omitted). Additionally, an ALJ may discount a treating physician's assessment that is in conflict with testimony from the claimant himself. *Lester v. Chater*, 81 F.3d 821, 831 (9th Cir. 1995) (discussing *Andrews v. Shalala*, 53 F.3d 1035 (9th Cir. 1995)). Further, an ALJ may discount a treating physicians' opinions that are unsupported by the record as a whole. *Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1195 (9th Cir. 2004) (citation omitted).

    Here, the ALJ met his burden of showing specific, legitimate reasons for discounting the treating physician's controverted assessment of Plaintiff's functional limitations. The ALJ set out a detailed and thorough summary of the facts and conflicting

clinical evidence in assigning only some weight to the treating physician's assessment of Plaintiff's functional limitations and assigning substantial weight to the opinion of psychological consultative examiner Robert Wildman II, Ph. D. (AR 15-24, 28, 572-576.) Additionally, the ALJ directly and indirectly addressed factors listed in 20 C.F.R. § 404.1527(c) in evaluating the treating physician's opinion. (AR 15, 27-28.)

The ALJ detailed substantial evidence supporting his conclusion that the record as a whole shows that, contrary to the treating physician's assessment, Plaintiff's primary impairment is alcohol abuse. (AR 15, 16-19, 847.) The ALJ noted that the entirety of the medical record "constantly" referenced Plaintiff's alcohol abuse and use. (AR 15, 16-19.) The ALJ further explained that the record showed that from 2006 to 2009, Plaintiff's visits to Nevada Adult Mental Health Services for mental health complaints apart from alcohol abuse were few. (AR 15, 673-685.) Additionally, the ALJ points out that the treating physician's assessment was inconsistent with his own records showing that in 2009, Plaintiff reported improved sleep, only occasional nightmares, worsening anxiety and panic attacks, mild depression, and some mood swings. (AR 23, 847.) Further, the ALJ detailed how the treating physician's assessment was inconsistent with the Plaintiff's testimony with regard to Plaintiff's ability to pay attention for lengthy periods of time, follow written and verbal instructions, and get along with authority figures. (AR 15, 29, 156-158, 160-161, 844.)

As such, the ALJ met his burden of showing specific, legitimate reasons supported by substantial evidence for rejecting the treating physician's assessment of Plaintiff's functional limitations.

**2. Application of the Grids as a Framework**

When the Grids do not match the claimant's qualifications, the ALJ can either: (1) use the Grids as a framework and make a determination of what work exists that the claimant can perform, or (2) rely on a vocational expert when the claimant has *significant* nonexertional limitations. *See Hoopai,* 499 F.3d at 1075.

13

Thus, if the claimant has solely nonexertional limitations, section 204.00 of Appendix 2 in the Grids may provide a framework for the ALJ's disability determination. *See* SSR 85-15, 1985, WL 56857 (Jul. 11, 2013). The ALJ may not rely solely on the Grids as a guideline unless they accurately and completely describe the claimant's abilities and limitations. *Jones*, 760 F.2d at 998 (citation omitted).

On the other hand, the ALJ *must* take the testimony of a vocational expert where the claimant suffers from non-exertional limitations that are "sufficiently severe so as to significantly limit the range of work permitted by his exertional limitation."[8] *Hoopai,* 499 F.3d at 1076 (internal quotation and citation omitted). As indicated above, where the ALJ finds, however, that a nonexertional limitation alone is severe [at step two of the sequential process] (absent any exertional limitation), the ALJ is not required to seek the assistance of a vocational expert at step five unless the nonexertional limitation(s) are "significant, sufficiently severe, and not accounted for in the grid[s]." *See id*. (rejecting claimant's assertion that because the ALJ found severe depression at step two, then the impairment must constitute a significant non-exertional limitation at step five such that the assistance of a vocational expert is required). Further, the ALJ is not required to include limitations not supported by the record in his RFC. *See Stubbs-Danielson v. Astrue* 539 F.3d 1169, 1175-76 (9th Cir. 2008) (The plaintiff "simply restates her argument that the ALJ's finding did not account for all her limitations because the ALJ improperly discounted her testimony and the testimony of medical experts. As discussed above, we conclude the ALJ did not"); *Batson*, 359 F.3d at 1197 (determining claimant's RFC, "[t]he ALJ was not required to incorporate evidence from the opinions of [the claimant]'s treating physicians, which were permissibly discounted").

Here, the ALJ correctly used the Grids (20 C.F.R. Part 404, Subpart P, Appx. 2,

---

[8] It is important to note that "satisfaction of the step two threshold requirement that a claimant prove her limitations are severe is not dispositive of the step-five determination of whether the non-exertional limitations are sufficiently severe such as to invalidate the ALJ's exclusive use of the grids without the assistance of a vocational expert." *Hoopai v. Astrue,* 499 F.3d 1071, 1076 (9th Cir. 2007).

14

§ 204.00) as a framework for the disability determination at step five. There is substantial evidence to support the ALJ's determination that Plaintiff's nonexertional limitations did not warrant the use of a VE and the mere existence of nonexertional limitations at step five does not require the use of a VE. *See Hoopai,* 499 F.3d at 1076. As discussed above, the ALJ permissibly discounted the treating physician's assessment; therefore, the ALJ was not required to include the treating physician's proffered limitations, nor the treating physician's proffered severity of those limitations in his analysis.

The ALJ, in his RFC determination at step four and disability determination at step five, repeatedly cites to the medical record in his assessment of the severity of the Plaintiff's nonexertional limitations. (AR 15-23, 25.). Accordingly, based on the medical record and the consultative physician's assessment, the ALJ found the Plaintiff had the RFC to perform the full range of work at all exertional levels except that he must be limited to simple, repetitive tasks with no public contact and with only occasional contact with co-employees. (AR 15.) As such, it is clear the ALJ determined that Plaintiff's nonexertional limitations were not significant, nor were they sufficiently severe limitations to warrant the use of a VE at step five. (AR 15-23, 25.)  The mere existence of nonexertional limitations does not require the use of VE at step five and there is substantial evidence to support the ALJ's determination that Plaintiff's nonexertional limitations were not significant,  nor sufficiently severe to warrant the use of a vocational expert; therefore, the ALJ correctly used the Grids as a framework in the step five disability determination and did not err by choosing not to consult a VE.

**E.  Harmless Error**

Administrative adjudications are subject to the same harmless error rule that generally applies to civil cases. *Ludwig v. Astrue*, 681 F.3d 1047, 1054 (9th Cir. 2012) (citation omitted). "Reversal on account of error is not automatic, but requires a determination of prejudice." *Id.* (citation omitted); *see also Molina v. Astrue,* 674 F.3d 1104, 1118 (9th Cir. 2012); *McLeod v. Astrue,* 640 F.3d 881, 888 (9th Cir.2011). The

burden is on the party claiming error to demonstrate not only the error, but also that it affected his substantial rights, which is to say, not merely his procedural rights. *Ludwig*, 681 F.3d at 1054. The harmless error rule requires that the court "give judgment after an examination of the record without regard to errors or defects which do not affect the substantial rights of the parties." 28 U.S.C. § 2111.  A claimant need not necessarily show what other evidence might have been obtained had there not been error, but does have to show at least a substantial likelihood of prejudice. *Ludwig*, 681 F.3d at 1054 (internal quotation marks and citation omitted). To evaluate error for harmlessness, the court must exercise judgment in light of the circumstances of the case. *Id.* (internal quotation and citation omitted).

While Plaintiff does not directly raise this issue, the ALJ may have erred by separating out the impact of the Plaintiff's alcoholism in his RFC determination at step four of the sequential process. *See Bustamante*, 262 F.3d at 955 (citations omitted) ("[A]n ALJ must first conduct the five-step inquiry without separating out the impact of alcoholism or drug addiction"). However, this is a harmless error because the ALJ did not halt the five-step sequential process due to the separation of the affect of his alcoholism, rather he proceeded with the evaluation despite attributing some of the Plaintiff's limitations to his alcoholism. *See id.* at 955. The ALJ continued the process and still made a determination of disability at step five when he determined that no jobs existed in significant numbers in the national economy that the plaintiff could perform - despite separating the affect of Plaintiff's alcoholism and using the Grids as a framework for his determination. (AR 25.) As such, there is not a substantial likelihood of prejudice from this error.

Further, as discussed above, there is substantial evidence to support the ALJ's finding in the drugs and alcohol analysis that Plaintiff's remaining limitations, absent his alcohol abuse, would not constitute a significant nonexertional limitation on his ability to perform work-related activities. (AR 15-26, 30.) Accordingly, the ALJ properly found that,

if the Plaintiff stopped his substance abuse, the remaining limitations would have "little or no effect on the occupational base of unskilled work at all exertional levels because the claimant's only restriction is to be limited to unskilled work - and the [Grids] cite to only unskilled jobs." (AR 30.) Therefore, any proffered error by the ALJ at steps 1 through 5 of the sequential process would not have prejudiced the Plaintiff because a determination of non-disability was correctly made in the ALJ's drug addiction and alcoholism analysis.

## IV. CONCLUSION

After carefully reviewing the record as a whole, the district court should find there is substantial evidence to support the ALJ's determination.

## V. RECOMMENDATION

**IT IS HEREBY RECOMMENDED** that Plaintiff's Motion for Reversal of the Commissioner's Decision (Doc. #14) be **DENIED.**

**IT IS FURTHER RECOMMENDED** that the Defendant Commissioner's Cross-Motion for Summary Judgment (Doc. #16) be **GRANTED** and that the decision of the ALJ be **AFFIRMED**.

DATED: July 15, 2012

_____
WILLIAM G. COBB
UNITED STATES MAGISTRATE JUDGE